Henderson, Judge,
 

 delivered the opinion of the Court as follows:
 

 It is objpcted by the defendant, that the writ is in debt, and the declaration is in case or assumpsit.
 

 The plaintiff answers, that this objection does not appear,
 
 oyer
 
 not being craved of the writ; and it is likened to the original in England, and English authorities are cited which fully support the answer. But the objection, as it exists here, is not answered; the writ issuing from the same Court is upon record without its being put there upon the prayer of
 
 oyer.
 
 In England, the original issuing from a different Court, (the Court of Chancery,) can only get on the records of another Court, but by obtaining
 
 oyer
 
 of it.
 

 It is next answered by the defendant, that the writ being only process, a variance between it and the declaration is immaterial; that the defendant in Court is bound 'to plead to any declaration; and English authorities are
 
 *111
 
 cited, which also fully establishes this position. This answer requires some investigation. In England no possible injury can arise to any one by thus disregarding the process, neither the bail to the writ, bail to the action, or the defendant. In this country, both the bail and the defendant may be materially injured by it. In England, the bail to the writ are discharged by the defendant’s appearance, the condition of the bail bond is fulfilled. The bail to the action cannot be injured, because they contract their obligation after appearance, and this obligation is evidenced by what is called the bail fbrm, in which the particular action is specified in which they are bail, and they can be made answerable in no other. The party cannot be injured, because no steps can betaken against him until he appears in Court, not even to declare against him; and if lie is surprised by the charge, he is entitled to time to plead. The process may, therefore, very properly be considered as
 
 functus ofjiáo,
 
 and be disregarded. But in this state the bail to the writ are also bail to the action; and if the process may be disregarded, they may be charged with a judgment in a different action from the one in which they became bail. But it is said, if the action is varied, the bail are discharged. Not so, I answer, if it is a matter of course to disregard the process; it is only by i'egarding it that such consequence follows, but above all, the heaviest consequences may fall on the defendant. In England, a default is for withdrawing after-having been in Court; no steps can be taken by the plaintiff until he has got the defendant in Court; if after having been in Court he withdraws, it is an admission of the facts alleged against him. By the construction put upon our Court law of 1777, a default may as well be before appearance as after; and we are daily in the habit of taking judgments by default against a person who has not: appeared in Court, some of them final, some interlocutory. If it were a matter of course to disregard the process, and that a declaration might.be filed for any other
 
 *112
 
 cause of action, a defendant, who might have been arrested for some paltry sum which he disregarded, and therefore did not appear to defend it, either because it was due or for any other cause, might have a final judgment entered against him by default for half or the whole of his estate,* or he might be sued for one thing which he admitted himself culpable in, and charged in another which he would have denied. And it is no answer to say, that the same law requires a copy ot' the declaration to be served on the defendant three or five days before Court; this omission must be shown by
 
 plea
 
 of the defendant; and if he makes default, he is not there to plead. The Court will only see that the original declaration is filed in Court within the prescribed time. These inconveniences would result from adopting the English practice; which is admitted to be proper there, but combined with our other rules of practice would be ruinous here. Nor is it any reason why they should be adopted here, that upon application to a Judge a
 
 supersedeas
 
 might be obtained; it might, but it is best to prevent the mischief. A man might have his property sold, or his person imprisoned, before he could have an opportunity to redress himself. I, therefore, think that the variance is fatal. But as this is a new case, and the Court below may allow of an amendment upon equitable terms, and there are good grounds for granting a new trial, the Court will not arrest the judgment, but leave it to the discretion of the Court below to allow an amendment, if it should think proper.
 

 The next objection is to the declaration. The counts upon the note are bad. This is not a note within the statute of
 
 Ann,
 
 or our act of 1762. Were it so, it might be declared on, for these statutes make notes which came within them evidence of a debt, and not barely evidence of a promise, as such notes were before the statute. But this note being payable only on a contingency, and not absolutely, is unaffected by the statute. A note for mo
 
 *113
 
 ney before the statute, was evidence of so much money lent, or had and received; it was given in evidence on counts like these, and the Courts instructed the jury that they were well warranted in drawing such conclusions; for, from the nature of man, it was not presumable that he would give this deliberate evidence of his promise, without he had in his hands so much money belonging to the payee. But this was only presumption of fact; the law raised no such presumption, until the statute raised it. This note being a conditional promise to pay, on a contingency .which might never happen, no such presumption can arise; it does not afford evidence that the plaintiff had lent the sum expressed in the note, or that the defendant had received such a sumJbr the use of the plaintiff; for if such had been the case, the plaintiff would not have accepted a note payable only on a contingency in satisfaction thereof. But if it is said, that at least it i» evidence of some sum having been received, or some sum lent, it may be asked how much? Such a sum as would make the bet equal, whether
 
 Daniel’s
 
 note would ever be collected? We have no means of ascertaining how much this would be. Besides, this would be a species of gambling; to make the most of it, it would be left to mere conjecture what the consideration was; it might be good and it might be bad. There can be no harm in compelling the plaintiff to set out in his declaration, what the consideration was. I am satisfied that the one stated in the declaration is not the true one, to wit, for so much money had and received by the defendant to the use of the plaintiff, or so much money lent by the plaintiff to the defendant, and that the Judge ought to have so instructed the jury. If the real consideration had been stated, and the money on
 
 Daniel’s
 
 bond collected either in fact or in law, the Court could have passed on the contract, and given the plaintiff a judgment, if in law he was entitled to one, if not, a judgment for the defendant. As it is, it is all conjecture. For this omission of the Judge on sub
 
 *114
 
 mitting an issue to the jury without any evidence to support it, I think that a new trial should be granted.
 

 I do not intend to be understood as conveying an idea that only such notes as are within the statute can be.offered in evidence in support of the money counts, for the statute has no operation upon this question. A note for corn, cotton, or any other article, is certainly
 
 prima fade
 
 evidence of the maker’s having received an adequate value; it is, therefore, evidence of such consideration
 
 pri-ma fade.
 
 But I think these contingent notes, which may never become payable, do not raise such a presumption; in fact, the presumption which it raises is too uncertain. It requires proof of what the consideration was; and if proof must be made, the fact of the consideration must bo stated in the declaration.
 

 I should have thought that the statutes before mentioned had made notes which were within them conclusive evidence of a debt; for they declare, that when any person shall make any note for the payment of money payable to any other person, the money expressed to be payable therein, shall be considered to be due and payable to the person to whom the note is payable; thus making the note evidence of a debt by a conclusion of law, and therefore, by the proof of the note, the debt is proved, and that the want of a consideration could be no defence, for a consideration is not required by the statute to make the note evidence of the debt; that notes within the statute by its operation stood upon the same grounds in this-particular as specialties, which were good without a consideration; for I think that Mr.
 
 Black stone
 
 is wrong when he says, that a bond, from the solemnity of the sealing, carries with it an evidence of a good consideration; a voluntary bond is obligatory at law, and equity will not foT that cause alone interfere, even if the want of a consideration appears upon its face, it is in the nature of an executed contract. The symbolical delivery of the obligor’s seal, having the effect of executing the original contract,
 
 *115
 
 and when an action is brought upon it, is not to enforce the original contract, which being executory would require a consideration, but to convert the symbolical perform anee into an actual one, as it were to compel the ob-ligor to redeem the symbol. If a gift of a chattel is made and there is no delivery, such gift cannot be enforced for want of a consideration; the contract is voluntary and repuires a consideration to support it; but if a delivery is made, the property passes without a consideration, it is then an executed contract, and the want of a consideration is immaterial. I mean to say, that a bond may be declared on without stating a consideration, and the defendant shall not impeach it by proof of the want of a consideration. A note within the statute has the same effect as a bond; it is evidence of debt, and is good without a consideration. To permit the defendant to impeach it for want of one, is, I think, in the teeth of the statute. But those who came immediately after the statute, said the statute affected no charge in them between the parties, and confined its operation to cases after assignment, so far as regarded a consideration; and I believe it is now the settled course of practice to permit the maker of a note, as well when the note is within, as when it is without the statute, to impeach it for want of a consideration, in a suit with his payee, confining the operation of the statute to cases where there is an endorsement for value. Let a new trial be granted.
 

 Judgment reversed;